1  ANTHONY J. ORSHANSKY, Cal. Bar No.199364
   anthony@counselonegroup.com
2  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
3  COUNSELONE, P.C.
4  9301 Wilshire Boulevard, Suite 650
   Beverly Hills, California 90210
5  Telephone: (310) 277-9945
   Facsimile: (424) 277-3727
6
7  Attorneys for Plaintiff RICHARD HALL,
   on behalf of himself and others similarly situated
8
9
10              **UNITED STATES DISTRICT COURT**
11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  RICHARD HALL, on behalf of himself and others similarly situated, | Case No. 3:14-CV-02148-MMC |
| 15              Plaintiff, | **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 16          v. | |
| 17  DIAMOND FOODS, INC., a Delaware corporation, dba KETTLE FOODS, and DOES 1 through 50, inclusive, | *[Filed concurrently with Plaintiff's Opposition to Defendant's Request for Judicial Notice, Plaintiff's Request for Judicial Notice, Declaration of Anthony J. Orshansky]* |
| 19              Defendants. | |
| 21 | Date:        July 18, 2014 |
| 22 | Time:        9:00 a.m. |
| 23 | Courtroom: 7, 19th Floor |
| | Judge:        Hon. Maxine M. Chesney |

24
25
26
27
28

## **Table of Contents**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

III.   STATEMENT OF ISSUES TO BE DECIDED ......................................................... 3

IV.   LEGAL STANDARD ............................................................................................... 3

A. Standard under Rule 12(b)(6) ................................................................................. 3

B. Standard under Rule 12(f) ...................................................................................... 4

C. Standard under Rule 9(b) ........................................................................................ 4

V.   ARGUMENT ............................................................................................................. 4

A. Plaintiff Has Stated a Claim Based on the Reduced-Fat Kettle Chips.................... 4

B. Plaintiff Has Alleged Facts Showing That the Reasonable Consumer Would Be Misled by Defendant's Labeling......................................................................................................... 8

1. The Reasonable Consumer Would Be Misled by Defendant's Reduced-Fat Representations ............................................................................................... 10

2. The Reasonable Consumer Would Be Misled by Defendant's All-Natural Representations ................................................................................................ 15

(a) Defendant's "Natural" Representations Convey Affirmative and Specific Factual Information about the Misbranded Products.................................................... 15

(b) Plaintiff Has Plausibly Alleged That the Term "All Natural" Would Mislead the Reasonable Consumer ............................................................................................... 17

C. The Court Should Deny Defendant's Motion to Strike References to So-Called "Non-Label Material." ........................................................................................................ 20

D. The Court Should Deny Defendant's Motion to Dismiss Plaintiff's Claim under the Unlawful Prong of the UCL and Strike Relevant Allegations........................................... 22

E. Plaintiff Has Sufficiently Stated a Claim for Unjust Enrichment .................................. 25

F. Alternatively, Leave to Amend Should Be Granted ...................................................... 25

VI.   CONCLUSION ....................................................................................................... 25

-i-

1

### Table of Authorities

2

<u>Cases</u>                                                                                                   <u>Page(s)</u>

3

*Accord Jou v. Kimberly-Clark Corp.,*
4       2013 WL6491159 (N.D. Cal. Dec. 10, 2013)………………………….……………14

5

*Ang. v. Bimbo Bakeries USA, Inc.,*
6       2013 WL5407039 (N.D. Cal. Sept. 25, 2013)……………….……………….……...6, 7

7

*Ashcroft v. Iqbal,*
8       556 U.S. 662 (2009)………………………………………………………..….………4

9

*Astiana v. Ben & Jerry's Homemade, Inc.*
        2011 WL 2111796 (N.D. Cal. May 26, 2011)………………….……………...…….7, 9, 15, 25
10

11

*Astiana v. Kashi Co.,*
        291 F.R.D. 493 (S.D. Cal. 2013)…………………………………………………...16
12

13

*Balsar v. Hain Celestial Group, Inc.,*
        2013 WL 6673617 (C.D. Cal. Dec. 18, 2013)……...…………………………….....20
14

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,*
15       366 F.3d 692 (9th Cir. 2004)…………………………………………………….25

16

*Bell Atl. Corp. v. Twombly,*
17       550 U.S. 544 (2007)………………………………………………………..….……3, 4

18

*Bohac v. General Mills, Inc.,*
        2014 WL1266848 (N.D. Cal. Mar. 26, 2014)…………………………………..…passim
19

20

*Chin v. General Mills, Inc.,*
        2013 WL 2420455 (N.D. Cal. 2013)……………………………………………20
21

22

*Colgan v. Leatherman Tool Group, Inc.,*
        135 Cal. App.4th 663 (2006)……………………………………………..…10
23

24

*Colluci v. ZonePerfect Nutrition Co.,*
        2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)…………………………………10, 25
25

26

*Daugherty v. Am. Honda Motor Co., Inc.,*
        144 Cal. App. 4th 824 (2006)…………………………………………………23

27

*Brazil v. Dole Food Co.,*
28       2013 WL 5312418 (N.D. Cal. Sep. 23, 2013)…………..……………………..23

*Fitzpatrick v. General Mills, Inc.*,
    263 F.R.D. 687 (S.D. Fla. 2010)……………………………………………………21

*Frezza v. Google Inc.*,
    2013 WL I736788 (N.D. Cal. Apr. 22, 2013)……………………………………23

*Gilligan v. Jamco Dev. Corp.*,
    108 F. 3d 246 (9th Cir. 1997)…………………………………………………...………4

*Gitson v. Trader Joe's Co.*,
    2013 WL5513711 (N.D. Cal. Oct. 4, 2013)………………….………………....8, 18, 20

*Gitson v. Trader Joe's Co.*,
    2014 WL1048640 (N.D. Cal. Mar. 14, 2014)………………………………………7, 9, 11

*Hairston v. So. Beach Beverage* Co., Inc.,
    2012 WL 1893818 (C.D. Cal. Apr. 16, 2012)…………………………...……….20

*Henderson v. Gruma Corp.*,
    2011 WL1362188 (C.D. Cal. Apr. 11, 2011)……………………………………18

*Hightower v. Tilton*,
    2012 WL1194720 (E.D. Cal. Apr. 10, 2012)………………………….…………19

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009)……………………………………………………....18

*In re ConAgra Foods, Inc.*
    908 F.Supp.2d 1090 (Nov. 15, 2012)………………………………………….7, 8, 18

*Janney v. Mills*,
    2014 WL 1266299 (N.D. Cal. Mar. 26, 2014)……………………….…………18

*Kasky v. Nike, Inc.*
    27 Cal.4th 939 (2002)……………………………………………...……10, 14

*Kearns v. Ford Motor Co.*,
    7 F.3d 1120 (9th Cir. 2009)……………………………………………………23

*Kwikset v. Super. Ct.*,
    51 Cal. 4th 310 (2011)…………………………………………………………...24

*Lam v. Gen. Mills, Inc.*,
    859 F.Supp.2d 1097 (N.D. Cal. 2012)…………………….……………………17

*Lavie v. Proctor & Gamble Co.*,

-iii-

105 Cal.App.4th 496 (2003)……………………………………………………..…10

*Lockwood v. ConAgra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009)…………………………………………18

*Khasin v. Hersey Co.*,
    2012 WL5471153 (N.D. Cal. Nov. 9, 2012)……………………………………25

*Morales v. Unilever United States, Inc.*,
    2014 WL1389613 (E.D. Cal. Apr. 9, 2014)……………………………….…..15, 16

*Morey v. NextFoods, Inc.*,
    2010 WL 2473314 (S.D. Cal. Jun. 7, 2010)……………………………………..21

*Paulus v. Bob Lynch Ford, Inc.*,
    139 Cal. App. 4th 659 (2006)……………………………………………………24

*Pelayo v. Nestle USA, Inc.*
    2013 WL5764644 (C.D. Cal. Oct. 4, 2013)…………………………….…..16, 17, 19

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
    352 F. Supp. 2d 1048 (N.D. Cal. 2004)……………………………...……….4

*Public Lands for the People, Inc. v. United States Dep't of Agric.*,
    697 F.3d 1192 (9th Cir. 2012)……………………………………………………21

*Ries v. Arizona Beverages USA, LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)…………………………………………………23

*Ries v. Hornell Brewing Co., Inc.*,
    2011 WL1299286 (N.D. Cal. Apr. 4, 2011)……………………………….…..6, 7, 8

*Rikos v. Proctor & Gamble*,
    782 F.Supp.2d 522 (2011)……………………………… …………………20

*Rojas v. Gen'l Mills, Inc.*
    2014 WL 1248017 (N.D. Cal. Mar. 26, 2014)…………………………….…..17, 20

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. April 16, 2012)………………………………….20

*Rubio v. Capital One Bank*,
     613 F.3d 1195 (9th Cir. 2010)……………………………………………………24

*Sanders v. Kennedy*,
    794 F. 2d 478 (9th Cir. 1986)…………………………………………...……….4

-iv-

*Smajlaj v. Campbell Soup Co.,*
    782 F. Supp.2d 84 (D.N.J. 2011)……………………………………………5, 13, 14

*Surzyn v. Diamond Foods, Inc.*
    2014 WL2212216 (N.D. Cal. May 28, 2014)…………………………………16, 17, 19

*In re Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (2010)………………………………………………………23, 24

*United States v. Bhutani,*
    266 F.3d 661 (7th Cir. 2001)………………………………………………………22

*United States v. Milstein,*
    401 F.3d 53 (2nd Cir. 2005)………………………………………………………22

*Vicuna v. Alexia Foods, Inc.,*
    2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)……………………………………19, 25

*Videtto v. Kellogg USA,*
    2007 WL4766060 (C.D. Cal. May 21, 2007)……………………………………………9

*Viggiano v. Hansen Natural Corp.,*
    944 F. Supp. 2d 877 (C.D. Cal. 2013)………………………………………………20

*Von Koenig v. Snapple Beverage Corp.,*
    713 F.Supp.2d 1066 (E.D. Cal. 2010)……………………………………………...…18

*Werbel v. Pepsico, Inc.,*
    2010 WL2673860 (N.D. Cal. Jul. 2, 2010)…………………………………………………9

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008)……………………………………………………passim

**<u>Statutes</u>**

Bus. & Prof. Code §§ 17200, et seq. ("UCL")……………………………………passim

Bus. & Prof. Code §§ 17500, et seq. ("FAL")……………………………………………8

Cal. Civ. Code §§ 1750, et seq. ("CLRA")…………………………………………..8

Cal. Health & Safety Code § 111825……………………………………………………22

Cal. Health & Safety Code § 109875 ("Sherman Law")………………………………8, 9, 24

-v-

**Rules & Regulations**

21 CFR § 101.13(j)(1)(ii)(A), (B)……………………………………………………….5

21 CFR § 101.13(j)(2)(i)……………………………………………………………..…5

21 CFR § 101.62(b)(4)(ii)(A)…………………………………………………………12

21 USC § 301, et seq. ("FDCA")……………………………………………9, 12, 23

21 U.S.C. § 321(m)……………………………………………………………………21

56 Fed. Reg. 60445 (Nov. 27, 1991)……………………………….................13, 15

58 Fed. Reg. 2302-01 (Jan. 6, 1993)………………………………..............5, 12

58 Fed. Reg. 2366……………………………………………............14, 15

Fed. R. Civ. P. 8……………………………………………..………………….4

Fed. R. Civ. P. 9(b)……………………………………………..………1, 4, 7, 8

Fed. R. Civ. P. 12(b)(6)…………………………………..…..…………3, 15, 18

Fed. R. Civ. P. 15(a)………………………………………………………25

**Other Authorities**

Stem, § 5.166, Bus. & Prof. Code § 17200 Practice (The Rutter Group 2012)………………23

Plaintiff's Response in Opposition to Motion to Dismiss
Case No. 3:14-CV-02148-MMC

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This lawsuit arises from Defendant Diamond Foods, Inc.'s ("Defendant") attempt to boost sales by overstating the quality of its potato and tortilla chips.  Defendant has festooned its product labels and marketing materials with representations that have positive connotations for consumers such as "all natural," "absolutely nothing artificial," and "reduced fat."  These representations are false.  Plaintiff Richard Hall ("Plaintiff") alleges claims arising from Defendant's unlawful and deceptive marketing practices.  Defendant has moved to dismiss Plaintiff's claims and strike allegations, but Defendant's arguments are as superficial as the contested representations.  The Court should therefore deny the motion to dismiss and strike.

First, Plaintiff has pled claims arising from Defendant's reduced-fat representations with particularity under Rule 9(b) because he has described in detail the product labels he read and relied upon and stated the "who, what, when, where, and how" of the alleged deception.  When a complaint is this specific, no more is required.  Consequently, the Court should reject Defendant's suggestion that a "picture" of a product label for every single contested product must be attached to the Complaint.  Although attaching a label may be *sufficient* to state a claim, no case holds that is *necessary*.  In the practice of law pictures need not displace words.

Plaintiff has also alleged facts showing why reasonable consumers were likely misled by Defendant's misrepresentations.  The FDA has concluded that a comparison with the appropriate reference food and its identification immediately adjacent to the principal reduced-fat representation are material to consumers' purchasing decisions.  Because Defendant markets its reduced-fat chips based on comparisons with an inappropriate reference food and further obscures the identity of reference food, Defendant's reduced-fat representations are likely to mislead reasonable consumers.

So too are Defendant's representations that the subject products are "natural."   That term is widely understood as denoting the absence of synthetic, artificial ingredients and color additives.   Indeed the common acceptation of the term comports with Defendant's own representations that the products contain "absolutely nothing artificial."  Because Defendant expects consumers to rely on these representations, the falsity of these claims would deceive

Plaintiff's Response in Opposition to Motion to Dismiss
Case No. 3:14-CV-02148-MMC

reasonable consumers.

Moreover, Plaintiff pleaded all claims alleged in the Complaint with particularity, even though this is required only for claims sounding in fraud; therefore Defendant's attack on Plaintiff's claim under the unlawful prong of the UCL is without consequence.   Nonetheless, requiring a showing of reliance under the unlawful prong would render the distinctions between the UCL's unlawful and fraudulent prongs a meaningless nullity, and the Court should not hold that reliance is required under the unlawful prong.

Nor should the Court dismiss Plaintiff's claim for restitution based on a theory of quasi-contract or unjust enrichment.   Numerous courts in this District have held in mislabeling cases almost identical to this one that consumers may state this claim in the alternative to tort or contract theories of recovery.

Finally, Plaintiff's references to Defendant's website and promotional materials should not be stricken because the alleged misrepresentations appearing in those media are identical to the representations made on the product labels and relied on by Plaintiff and are also incorporated by reference into the product labels, which identify Defendant's website address.

Accordingly, Defendant's motions to dismiss and strike should be denied.   In the alternative, Plaintiff leave to amend should be granted

## II.  STATEMENT OF FACTS

Defendant markets and sells kettle-cooked potato chips and tortilla chips ("Misbranded Products").  (Compl. ¶ 1.)  Kettle chips are generically different from regular potato chips in their manner of production and their end result.  (Compl. ¶ 10.)  Defendant advertises the Misbranded Products, both on the product labels and online, as being "natural," "all natural," "absolutely nothing artificial," or words of similar import ("Misbranded All-Natural Products").  (*Id.* at ¶¶ 11, 12.)  Defendant also markets and sells a line of reduced-fat kettle chips ("Misbranded Reduced-Fat Products").  (*Id.* at ¶ 13.)

Plaintiff alleges that Defendant's representations are unlawful, false, misleading, and deceptive because the Misbranded All-Natural Products actually contain "synthetic, artificial ingredients, or color additives," including chemical preservatives and artificial flavoring, *see id.*

at ¶¶ 3, 5, 17, 23, 28, 29, 46, 49, which consumers do not expect to find in a "natural" product. (*Id.* at ¶ 16.)  Plaintiff also alleges that Defendant neglects to compare the Misbranded Reduced-Fat Products with the appropriate reference food when making relative claims about fat content and also fails to identify any reference food in proximity to the principal comparison, as required under law.  (*Id.* at ¶¶ 13, 39-45.)

Plaintiff alleges that he read the labeling representations identified above and relied upon them in deciding to purchase a number of the Misbranded Products.  (*Id.* at ¶¶ 46-49.)  He further alleges that had he would not have purchased the Misbranded Products or would not have paid a premium for them but for Defendant's representations.  (*Id.* at ¶ 49.)

### III.  STATEMENT OF ISSUES TO BE DECIDED

**1.**   Whether Plaintiff has stated a claim arising from Defendant's reduced-fat representations where he has alleged "who, what, when, where, and how" of the alleged deception.

**2.**   Whether Plaintiff must attach the product labels of each and every one of the Misbranded Products in order to state a claim.

**3.**   Whether Plaintiff has alleged facts sufficient to show that reasonable consumers could be misled by Defendant's reduced-fat and all-natural representations.

**4.**   Whether Plaintiff has alleged reliance under the unlawful prong of the UCL or, in the alternative, whether the unlawful prong requires a showing of reliance.

**5.**   Whether Plaintiff's allegations referencing Defendant's website and marketing materials should be stricken where the representations made in these media are identical to those made on product labels and support Plaintiff's claims sounding in fraud.

**6.**   Whether Plaintiff may state a claim for restitution based on a theory of quasi-contract or unjust enrichment where pled in the alternative to tort or contract theories of recovery.

### IV.  LEGAL STANDARD

#### A.  Standard under Rule 12(b)(6)

A complaint need only provide "a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554

1    (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Although the alleged claim must be plausible on its

2    face, "[t]he plausibility standard is not akin to a probability requirement."  *Ashcroft v. Iqbal*,

3    556 U.S. 662, 678-679 (2009).  Claims survive if they offer a reasonable inference of liability.

4    *Ibid.*  There is "a powerful presumption against rejecting pleadings for failure to state a claim."

5    *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The the Court must construe the

6    pleading in the light most favorable to the non-moving party, and all material allegations in it

7    must be taken as true.  *See Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

8    **B.  Standard under Rule 12(f)**

9        Motions to strike are generally disfavored and "should not be granted unless the matter

10   to be stricken clearly could have no possible bearing on the subject of the litigation…. If there

11   is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court

12   should deny the motion.*" Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057

13   (N.D. Cal. 2004) (citations omitted).  "With a motion to strike, just as with a motion to dismiss,

14   the court should view the pleading in the light most favorable to the nonmoving party."  *Ibid.*

15   **C.  Standard under Rule 9(b)**

16       Defendant appears to demand particularity only with regard to Plaintiff's claims relating

17   to Defendant's reduced-fat kettle chips, not with regard to his all-natural claims.[1]  (Mot. 1, ¶ 1;

18   Mem. 7:17-18.)  Plaintiff's claims under the "unlawful" prong of the UCL are not subject to

19   Rule 9(b)'s heightened pleading standard but rather Rule 8 notice pleading.  (*See* Section IV.D,

20   *infra*.)  Regardless, Plaintiff has pled all claims with particularity sufficient to satisfy Rule 9(b).

**V.  ARGUMENT**

22   **A.  Plaintiff Has Stated a Claim Based on the Reduced-Fat Kettle Chips.**

23       Defendant asserts that Plaintiff cannot state a claim based on the Misbranded Reduced-

24   Fat Products because he has not alleged which representations he relied on.  (Mem. 6:19-20.)

25   These assertions are incorrect and ignore Plaintiff's allegations.  Moreover, they do not affect

26   whether Plaintiff has stated a claim.

27

28   _____

[1]  Thus Defendant either concedes that Plaintiff's allegations relating to the Misbranded All-Natural Products satisfy Rule 9(b) or that these claims are subject to Rule 8 notice pleading.

Plaintiff's Response in Opposition to Motion to Dismiss
Case No. 3:14-CV-02148-MMC

1      Under 21 CFR § 101.13(j)(1)(ii)(A) and (B), a reference food must be representative of

2   "the type of food that includes the product that bears the claim."  That way, for example, "a

3   manufacturer of Italian salad dressing cannot choose a particularly unhealthy formulation of

4   Italian salad dressing as a comparator."  *See Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84,

5   94 (D.N.J. 2011).  In *Smajlaj*, the court refused to dismiss the plaintiffs' claim that they were

6   misled into purchasing lower sodium condensed tomato soup where the defendant identified the

7   reference food as "regular condensed soup," as opposed a more specific food within the

8   category such as condensed *tomato* soups.  *Id.* at 95.  "[T]he regulations do not expressly

9   permit a reference food that is actually a category of foods. … [B]eing within a category is

10   different from being an entire category."  *Ibid.*

11      The FDA requires manufacturers to identify the reference food in a way that is not

12   misleading.  *See* 21 CFR § 101.13(j)(2)(i); 58 Fed. Reg. 2302-01, 2363 (Jan. 6, 1993).  A food

13   manufacturer may be in violation of the reference-food regulations even if it has used the

14   comparison language suggested by the FDA if the company exercises poor judgment in

15   avoiding claims that are misleading because of their "overall context or presentation."  58 FR

16   2302-01, 2363 (Jan. 6, 1993).  (Compl. ¶¶ 41-42.)

17      Plaintiff has alleged that *all* of Defendant's reduced-fat kettle chips are mislabeled—

18   regardless of the precise labeling representations—because the reference food on every package

19   of reduced-fat chips is the same:  regular potato chips.  Plaintiff alleges that regular potato

20   chips is an inappropriate comparator because kettle chips are generically different from regular

21   potato chips in manner of production and their end result.  (Compl. ¶¶ 10, 41.)  Just as in

22   *Smajlaj*, comparing Defendants' kettle chips to a broad base of regular potato chips is false and

23   misleading.

24      Plaintiff alleges that when the Misbranded Reduced-Fat Products are compared with the

25   appropriate reference food the labeling representations on every single bag are misleading

26   because Misbranded Reduced-Fat Products are not reduced in fat by the represented

27   percentage.  (Compl. ¶ 44.)  As an example, Plaintiff attaches the nutrition information for

28   Defendant's regular kettle chips and its reduced-fat version.  (Compl., Addenda 2 and 3.)  A

comparison shows that although the label in Addendum 3 represents that the chips are reduced in fat by 40 percent, they are in fact reduced by only 33 percent.  (*Id.* at ¶ 44.)

Plaintiff *also* alleges that Defendant's labels and online representations are deceptive because they fail to identify the reference food in immediate proximity to the most prominent "reduced fat" claim on the label.  (*Id.* at ¶ 40.)  Plaintiff describes that the Misbranded Reduced-Fat Products either do not identify the reference food anywhere on the labels or else identify the reference food at the bottom of the bag, obscured from consumers.  (*Id.* at ¶¶ 13, 40.)  Plaintiff has specifically alleged that he read and relied on these labeling representation in purchasing the Misbranded Reduced-Fat Products.  (*Id.* at ¶¶ 48, 49.)

Defendant has requested the Court to judicially notice labels that the Complaint never describes.[2]  (*See* Def.'s RJN, Exhs. A & B.)  The Court should reject Defendant's RJN.  *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL5407039, at *4, fn 4 (N.D. Cal. Sept. 25, 2013) (declining to judicially notice product labels because "it is not clear that the labels defendant asks the Court to take notice of *are* the labels referred to in plaintiffs' Amended Complaint.") (*See also* Pl.'s concurrently filed Opp'n to Def.'s RJN.)  Plaintiff requests the Court to take judicial notice of images of the labels upon which Plaintiff did rely.  (*See* Pl.'s RJN, filed herewith, Exhs. A-D.)  Moreover, even if some labels of the Misbranded Reduced-Fat Products state do state the reference food proximate to the principal reduced-fat claim, Plaintiff still sufficiently alleges reliance on product labels that are not so labeled.  *Ang*, *supra*, at *4.

Defendant incorrectly asserts that Plaintiff must attach copies of the product labels that Plaintiff contends are deceptively labeled, as well the product label of each and every one of the Misbranded Products.  (Mem. 8:1-5, fn. 9.)  Defendant is incorrect.  This District in *Ang* specifically found that the plaintiffs need not identify the exact version of the labels relied on because they identified the specific representations themselves.  *Ang*, *supra*, at *4.  Defendant relies on *Ries v. Hornell Brewing Co., Inc.*, 2011 WL 1299286, at *4 (N.D. Cal. Apr. 4, 2011), but *Ries* did not find that attaching the labels was a necessary condition, merely a sufficient

---

[2]  Upon information and belief, the label of which Defendant requests the Court take judicial notice appeared proximate to Plaintiff's pre-lawsuit communications with Defendant regarding the alleged claims.

one.  *Ibid.* (agreeing that "Rule 9(b) *may* be satisfied by identifying or attaching samples of misleading materials.")(emphasis added).  *See Ang*, *supra*, at *3 (distinguishing *Ries* on the basis that the plaintiffs there failed to identify each product they claimed was mislabeled and did not allege specified misleading language).

What is necessary is that the plaintiff should describe the alleged misrepresentations in detail.  *See Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *5 (N.D. Cal. Mar. 14, 2014) (concluding that complaint pled with particularity where plaintiffs alleged the specific names of the misbranded products and identified the misrepresentations made on them).  Where, as here, the plaintiff has described the misrepresentations, it would be superfluous to require inclusion of an image of each and every advertisement bearing the exact same misrepresentations.  In *Gitson*, which involved more than 177 products, the court found the allegations sufficient without product labels of each and every one of the labels.  *Id.* at *2, 5.  In some instances—for example when the advertisement is no longer available—requiring a copy of the label or advertisement may be tantamount to foreclosing a meritorious claim.  It should also be borne in mind that all relevant labels are in the possession of Defendant.

As Defendant recognizes, Plaintiffs allegations are sufficient so long as he pleads the "who, what, when, where, and how" of the alleged deception.  (*See* Mem. 5:18-21.)  In *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *4 (N.D. Cal. May 26, 2011), the court found that the plaintiff satisfied this requirement:

> The "who" is Ben & Jerry's, Breyers, and Unilever.  The "what" is the statement that ice cream containing alkalized cocoa is "all natural."  The "when" is alleged as "since at least 2006," and "throughout the class period."  The "where" is on the ice cream package labels.  The "how the statements were misleading" is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a "synthetic."[3]

---

[3] *See also Gitson*, *supra*, at *5 ("The plaintiffs have identified the 'who' as Trader Joe's, the 'when' as the timeframe for the class allegations, the 'what' as the representations alleged to be illegal … ('(1) the product lists ECJ as an ingredient; (2) the product is called "soymilk;" or (3) the product label lists an ingredient that is an artificial color or chemical preservative but fails to disclose the ingredient as such'), as well as the names of the products on which that language is found."); *Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL5407039, at *2-4 (N.D. Cal. Sept. 25, 2013) (same, citing multiple cases); *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099-

---

-7-

So too here, Plaintiff alleges the "who," Defendant dba Kettle Foods (Compl. ¶ 1); the "what," Defendant's representations comparing kettle chips to regular potato chips, omitting reference to the reference food, failing to identify the reference food in proximity to the labeling statement "40% reduced fat potato chips," and implying a comparison with regular Kettle chips (*id.* at ¶¶ 13, 40-45); the "when," "during the class period" (*id.* at ¶ 47), which is defined as "from four years prior to the filing of the Complaint and continuing to the present" (*id.* at ¶¶ 52, 53); the "where," on Defendant's labels and on its website; and the "how," through the comparison with the improper reference food (i.e., potato chips) and/or the omission or suppression of the identity of the reference food (*id.* at ¶¶ 13, 40-45), as well as statements implying that regular Kettle chips are the comparator (*id.* at ¶ 13).

To the extent that *Ries* can be construed as requiring Plaintiff to adduce copies of the purchased products, he had done so in his accompanying Request for Judicial Notice.

**B. Plaintiff Has Alleged Facts Showing That the Reasonable Consumer Would Be Misled by Defendant's Labeling.**

Defendant asserts that Plaintiff's claims under the UCL, FAL, and CLRA should be dismissed because the reasonable consumer would not be misled by Defendant's labeling. (Mem. 8:8-10.)  Defendant is wrong on several accounts.

First, Defendant's argument is not applicable to Plaintiff's first cause of action for unlawful business practices under the UCL, for which Plaintiff need not show that the reasonable consumer would be misled.  *See*, *e.g.*, *Gitson v. Trader Joe's Co.*, 2013 WL5513711, at *9-10 (N.D. Cal. Oct. 4, 2013) (holding that plaintiffs stated a claim under the UCL's unlawful prong even though claims did not survive reasonable-consumer test); *id.* at **6, fn. 5 (acknowledging that "the reasonable consumer test does not apply to the plaintiffs' claims under the unlawful prong of the UCL predicated on Sherman Law violations.")

Under the unlawful prong of the UCL Plaintiff need only allege and prove that Defendant's representations were unlawful and that he lost money or property in making his

---

1100 (Nov. 15, 2012) (finding allegations sufficient under Rule 9(b) even where plaintiffs did not allege specific stores or dates of purchases).

purchases.  Plaintiff has done so.  He has alleged that the Misbranded Products are unlawful because they are misbranded under the Sherman Law, which incorporates the FDCA, *see* Compl. ¶¶ 65-68, and that Plaintiff lost money and property by purchasing the Misbranded Products that he would not have bought or for which he would not have paid a premium had they been correctly labeled.  (*Id.* at ¶¶ 49, 69-71.)

Second, whether Defendant's labels and advertisements would mislead the reasonable consumer is a factual question not appropriate for a motion to dismiss because it involves contested factual issues.  This is well established.  *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("The question of whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss.").[4]

Courts only grant motions to dismiss in the "rare"—one might say odd-ball—cases where it would be inconceivable for any sane person to take the labeling representations as conveying meaningful information to the consumer.  *See Williams*, 552 F.3d at 939.  Defendant collects these cases, *see* Mem. 9:1-11, but even the parenthetical descriptions betray them as odd-balls.  For example, no reasonable person would interpret Cap'n Crunch's Crunch Berries to refer to real fruit berries, *Werbel v. Pepsico, Inc.*, 2010 WL2673860, at *3 (N.D. Cal. Jul. 2, 2010) (finding that cereal balls depicted on label "do not even remotely resemble any naturally occurring fruit of any kind[]"), nor would a reasonable consumer conclude that a product called "Froot Loops" contained real fruit.  *Videtto v. Kellogg USA*, 2007 WL4766060, at *4 (C.D. Cal. May 21, 2007) ("Plaintiffs' allegation that the cereal pieces themselves resemble fruit is not rational, let alone reasonable.  The cereal pieces are brightly colored rings, which in no way resemble any currently known fruit.")

The challenged labeling claims here are not subject to the playful, nonsensical, often meaningless representations made in the foregoing cases.  Rather, they convey information that

---

[4] See also *Astiana*, *supra*, at *4 (even if defendant's implausibility argument were persuasive, whether consumers were misled by all-natural claims is a question of fact not to be decided on motion to dismiss); *Gitson*, *supra*, 2014 WL 1048640, at *5 (at the pleading stage, court could not "second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors and chemical preservatives."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013).

for the average consumer signifies something meaningful and objectively verifiable.  *Bohac v. General Mills, Inc.*, 2014 WL 1266848, at * 4 (N.D. Cal. Mar. 26, 2014) (denying motion to dismiss because "all natural" statements convey "affirmative and specific factual" information about the products).  Because the information Defendant conveys is false and misleading, the challenged representations are likely to deceive, and do deceive, reasonable consumers.[5]

A reasonable consumer is an "ordinary consumer acting reasonably under the circumstances who is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture."  *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 682.  Significantly, the California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.* 27 Cal.4th 939, 951, 119 (2002).

In this case, discovery and investigation, including consumer surveys, will show that (a) Defendant intended consumers to rely on the misrepresentations that the Misbranded Products were all natural and reduced fat, and (b) the average consumer would be misled by those representations when deciding to buy the Misbranded Products.

1.    **The Reasonable Consumer Would Be Misled by Defendant's Reduced-Fat Representations.**

Plaintiff alleges that he bought Kettle Brand Reduced Fat Sea Salt Chips (Compl. ¶ 47), and that "he read the label stating that the Reduced Fat Sea Salt Chips were 40 percent reduced fat."  (*Id.* at ¶ 48.)  He alleges that the reduced-fat representation appears "prominently in a green band across the center of the brown bag," *id.* at ¶¶ 13, 40; *see also* Plaintiff's RJN, Exh. A, and that the comparison with the reference food "does not appear in immediate proximity to this claim but, if at all, at the bottom of the bag, where consumers will overlook it, especially because the bottoms of the bags crumple when stocked on store shelves, thus obscuring the comparative statement."  *Id.* at ¶ 40.  Plaintiff alleges that the obscured placement of the

---

[5] *See Lavie v. Proctor & Gamble Co.* (2003) 105 Cal.App.4th 496, 504; *Colluci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800 at * 8 (N.D. Cal. Dec. 28, 2012) ("[T]he Court is not inclined to assume the role of fact-finder in the guise of determining plausibility.")

reference food is likely to deceive customers, "who often make purchasing decisions based on front-of-the-package representations in a matter of seconds." *Ibid.*   Plaintiff also alleges that he purchased several types of kettle chips, including regular Kettle Sea Salt Chips, *id.* at ¶¶ 47, and that kettle chips are "generically different" from regular potato chips.  *Id.* at ¶¶ 10, 43, 44.

Defendant points to a representation made in miniscule font size—and also crumpled up—on the back of bag identifying the grams of fat in Kettle Reduced Fat Chips versus regular potato chips.  (Mem. 10:2-3.)  This terse comparison is made far away from the primary reduced-fat representation, which appears on the front of the bag.  (*See* Compl., Addendum 2.) Importantly, nowhere in the Complaint does Plaintiff allege that he ever saw this comparison on the back of the bag, let alone understood what it meant or relied upon it.  In fact, although the Complaint itemizes the various labeling representations made with reference to the Misbranded All-Natural Products, it is specific that Plaintiff saw only the representation that "the Reduced Fat Sea Salt Chips were 40 percent reduced fat," which was made with a bright green band across the brown real estate of the bag.  (Compl. ¶ 48.)

On a motion to dismiss the Court must draw all reasonable inferences in favor of the nonmoving party, *Gitson*, WL1048640 at *3, and here the inference is that Plaintiff understood kettle chips to be a different variety of chip altogether that do not bear accurate comparison with other potato chips, and that in quickly making his purchasing decision he relied upon the conspicuous front-of-the-package representation that the product is reduced fat rather than a miniscule, cryptic, and faraway statement comparing the grams of fat.  Plaintiff alleges that Defendant, knowing that many consumers are faced with similar purchasing decisions, intentionally omitted comparison with some reference foods in order to deceive them into buying the Misbranded Reduced-Fat Products.  (Compl. ¶ 40.)

It is precisely because consumers make front-of-the-bag purchasing decisions on the spur of the moment that the FDA has regulated the way nutrient-content claims can be made. In October 2009 the FDA issued guidance to the food industry admonishing about front-of-the-package ("FOP") claims:

> FDA's research has found that with FOP labeling, people are less likely to check
> the Nutrition Fact label on the information of foods (usually, the back or side of

-11-

the package).  It is thus essential that both the criteria and symbols used in front-of-package and self-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading.[6]

The guidance also advises the food industry that nutrition-related FOP labeling is subject to the provisions of the FDCA that prohibit false or misleading claims and restrict nutrient content claims to those defined in the FDA regulations.  *Ibid.*  "Accurate food labeling information can assist consumers in making healthy nutritional choices."  *Ibid.*[7]

Regarding reduced-fat representations, the FDA has determined that identifying the reference food in immediate proximity to the reduced-fat comparison is essential to avoid misleading the consumer.  The Federal Regulations are explicit on this point.  A food may only be labeled "reduced fat" if, among other requirements, "[t]he identity of the reference food and the percent (or fraction) that the fat differs between the two foods are *declared in immediate proximity to the most prominent such claim* (e.g., 'reduced fat—50 percent less fat than our regular brownies')[.]"  21 C.F.R. § 101.62(b)(4)(ii)(A)(emphasis added_.)

In adopting this regulation, the FDA observed that "the percentage difference of the nutrient compared to a reference food and the identity of the reference food are facts <u>material</u> to the claim under [the FDCA]."  58 FR 2302, 2366, ¶ 212 (emphasis added).  This is why the FDA requires the reference food to be identified next to the most prominent nutrient-content claim on the principal display panel.  *Id.* at ¶¶ 214 ("[T]he agency tentatively concluded that the consumer will likely read the most prominent claim at the point of purchase, and that if the essential information is declared near the claim, the consumer will receive adequate

---

[6]  "Guidance for Industry: Letter Regarding Point of Purchase Food Labeling," Oct. 2009, at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm187208.htm (last accessed June 12, 2014).

[7]  *See also* Open Letter to Industry from FDA Commissioner Dr. Hamburg, Mar. 10, 2010 (noting that front-of-the-pack labeling has "grown tremendously in recent years, and … that such information can be helpful to busy shoppers who are often pressed for time in making their food selections.").

explanation of the meaning of the claim.").[8]  The FDA specifically rejected the suggestion that the identity of the reference food should be allowed to appear elsewhere on the label, away from the most prominent nutrient-content claim, with a notation such as an asterisk on the principal display panel intended to direct the consumer to this information.  *Ibid.*[9]

Moreover, even if Plaintiff had read the quantitative information on the back of the bag, it is a question of fact not appropriate for a motion to dismiss whether Plaintiff and other reasonable consumers were misled.  Again, the quantitative information should not be viewed in isolation but considered in context and as a whole.  *See*, *e.g.*, *Williams*, *supra*, 552 F.3d at 939.  Here, a reasonable consumer, viewing the "40% Reduced Fat" statements prominently displayed on the front and back of the bag, along with the statement "These Sea Salt chips have bold flavor and hearty crunch and 40% Reduced Fat," *see* Compl., Addendum 3, may well understand the quantitative information as stating a comparison between Defendant's regular Sea Salt chips and its Reduced-Fat Sea Salt chips.  *See Smajlaj*, *supra*, 782 F.Supp.2d at 98 (finding that reasonable consumers may understand "regular condensed soup" to refer to defendant's regular tomato soup).  Reasonable consumer would likely interpret the quantitative information as confirming the other reduced-fat representations.  *See Williams*, *supra*, 552 F.3d at 939-940 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").

Of course, reasonable consumers may have also simply overlooked the quantitative comparison, which again Defendant intentionally suppressed and obscured, or failed to appreciate its significance in light of the other, more prominent reduced-fat representations.  The quantitative comparison is "the type of quantitative information that generally appears on the information panel"—not the front label—and consequently the FDA has determined that it

[8] *See also* 56 FR 60445, 60447 (Nov. 27, 1991) (noting that the term "reduced"  "is viewed by industry and by public health professionals as being particularly effective in causing consumers to select one product over another.")

[9] *See also Smajlaj*, *supra*, 782 F.Supp.2d. at 97, fn 6 (finding that a footnote specifying the reference food as "an average of our regular condensed soup" does not render plaintiffs' claim implausible because the regulations require the identification of the reference food in immediate proximity to the nutrient-content claim).

-13-

1    need not accompany the principal reduced-fat claim.  *See* 58 FR 2366.

2         In like manner, the Ninth Circuit in *Williams* held that, notwithstanding disclosures

3    made in a product's ingredient statement, a reasonable consumer could plausibly be deceived

4    by more prominent representations made on the front of the package.  *Id.* at 939-940.  The court

5    specifically rejected the district court's reasoning that "reasonable consumers should be

6    expected to look beyond misleading representations on the front of the box to discover the truth

7    from the ingredient list in small print on the side of the box."  *Ibid.  Accord Jou v. Kimberly-*

8    *Clark Corp.,* 2013 WL 6491158, at *8-9 (N.D. Cal. Dec. 10, 2013) ("Defendant cannot rely on

9    disclosures on the back or side panels of the packaging to contend that any misrepresentation

10   on the front of the packaging is excused.").

11        So too here, it is plausible that the reasonable consumer relied upon the principal

12   reduced-fat representations in deciding to purchase Defendant's chips, and perhaps did not

13   even see or apprehend the quantitative information in context.  Again, Plaintiff does not allege

14   that he did see it.  Moreover, manufacturers may, and frequently do, compare their reduced-fat

15   products to their own regular products, *see* 58 FR 2362, ¶ 201, and the applicable consumer-

16   protection statutes prohibit not only false representation but also representations that, "although

17   true, [are] either actually misleading or which has a capacity, likelihood or tendency to deceive

18   or confuse the public."  *Kasky v. Nike, Inc.* 27 Cal.4th 939, 951, 119.  Plaintiff has specifically

19   alleged that Defendant's labeling of the Misbranded Reduced-Fat Products were intended to

20   "dupe consumers" in this manner.  (Compl. ¶ 40.)

21        Furthermore, as discussed above (Section IV.A, *supra*), Plaintiff alleges that

22   Defendant's representations would deceive the reasonable consumer for the additional reason

23   that Defendant compares its Misbranded Reduced-Fat Products to the inappropriate reference

24   food.[10]  *Cf. Smajlaj*, *supra*, 782 F.Supp.2d at 94 (finding average consumer could be deceived

25   by defendant's comparison of sodium content in condensed tomato soup with the broad class of

26   "regular condensed soup," as opposed a more specific food within the category such as

27   ─────────────────────
     [10]   Defendant does not challenge Plaintiff on this point; rather, Defendant contends that no

28   reasonable consumer would be misled by Defendant's reduced-fat representations solely
     because of the miniscule quantitative information on the back of the bag.

─────────────────────

condensed *tomato* soups).  The FDA considers comparisons with a class of similar products to be misleading.[11]  Because the identity of the reference food is "material" to consumers, *see* 58 FR 2366, ¶ 212, it is plausible that the reasonable consumer would be misled by Defendant's identification of an inappropriate reference food.

In sum, the Court should deny Defendant's Motion to Dismiss with regard to the Misbranded Reduced-Fat Products.[12]

## 2.    The Reasonable Consumer Would Be Misled by Defendant's All-Natural Representations.

### (a) *Defendant's "Natural" Representations Convey Affirmative and Specific Factual Information about the Misbranded Products.*

Defendant contends that Plaintiff cannot state a claim for the Misbranded All-Natural Products because he does not "plausibly allege an objective or subjective definition" of the term "all natural."  (Mem. 10:15-16.)

As Defendant notes, Mem. 10, fn. 11, this District recently rejected an identical

---

[11]  *See* 56 FR 60445, 60448 (Nov. 27, 1991) ("The agency … does not consider … a similar product or class of similar products … to be an appropriate point of reference comparing 'reduced' foods.  Such a reference point reflects a much wider variety of products …  For example, if a product is labeled as 'reduced fat imitation bacon bits,' it is claiming that it contains reduced fat when compared to other imitation bacon bits.  If such a claim could be made on the basis of a data base of products similar to imitation bacon bits, that data base would likely include a range of products, including bacon.  The imitation bacon bits could have reduced fat when compared to the data base but not necessarily any less fat than other imitation bacon bit products.  In such circumstances, the claim would clearly be misleading.  Thus, FDA believes that comparison to a data base of similar products is not an appropriate basis for a 'reduced' claim.")

[12]  The Court should also reject Defendant's off-hand reference to standing.  (*See* Mem. 10:8-9.)  This argument is not developed, and the question of standing is distinct from that of whether Plaintiff has stated a claim under Rule 12(b)(6).  *Astiana*, at \*5 (noting distinction and finding plaintiffs had standing where they purchased products allegedly containing synthetic ingredients based on all-natural representations that they would not otherwise have bought).  Defendant has not moved to dismiss under Rule 12(b)(1).  (*See* Mem. ¶¶ 1-6.)  Here, there is no doubt that Plaintiff has standing, because he has alleged that he read and relied upon the reduced-fat representations.  (Compl. ¶¶ 48, 49.)  *See Morales v. Unilever United States, Inc.*, 2014 WL1389613, at \* (E.D. Cal. Apr. 9, 2014) (finding standing under UCL where plaintiffs alleged they paid a premium for products labeled "natural" and that product labels contained material misrepresentations).

argument made by Defendant in *Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at *2 (N.D. Cal. May 28, 2014).  The court there found that the plaintiff had propounded a definition of "all natural" by virtue of allegations that the chips at issue contained "unnatural, synthetic, and/or artificial ingredients." *Ibid.*

Here too, Plaintiff consistently alleges that the Misbranded Products are not "all natural" because they contain "synthetic, artificial ingredients, or color additives," including chemical preservatives and artificial flavoring.  (Compl. ¶¶ 3, 5, 17, 23, 28, 29, 46, 49.)  Plaintiff explicitly alleges definitions from a well-known dictionary, the FDA, and the USDA because they are consistent with this understanding of the term "all natural."  (*Id.* at ¶¶ 14, 15, 18-20.)  A consumer survey cited in the Complaint demonstrates that "large majorities" of consumers understand the term similarly.  (*Id.* at ¶ 16 (alleging that the survey results show that consumers' understanding is "consistent with" the FDA's policy regarding the term.))  *See Bohac*, *supra*, at * 7 (denying motion to dismiss where plaintiff "has offered definitions of 'natural' that are internally consistent and supported by applicable federal regulations and guidance.").  Again, the meaning that consumers attach to the term is not a question that can be resolved at the pleading stage.  *Morales*, *supra*, at *7.

Defendant asserts that the definitions propounded by Plaintiff are inconsistent but fails to explain why.  (Mem. 11:8-12:2.)  Not only are these definitions consistent, but they comport with Defendant's own understanding of the term "all natural" to mean, *inter alia*, "absolutely nothing artificial."  (Compl. ¶¶ 11, 48.)  *Cf. Astiana v. Kashi Co.*, 291 F.R.D. 493, 504-505 (S.D. Cal. 2013) (certifying a class of consumers who purchased products labeled "Nothing Artificial" but which contained allegedly artificial ingredients).

Defendant's reliance on *Pelayo* is misplaced.  The order has been roundly criticized and rejected for its reliance on a Federal Trade Commission (FTC) report declining to proffer specific guidance on the meaning of the term "natural" because consumer perception is context-specific.  *Surzyn*, *supra*, at *3.  As the *Surzyn* court correctly concluded, "rather than justifying the *Pelayo* court's dismissal of the action at the pleading stage, the FTC's observations support the conclusion that the question of whether consumers were deceived by

1    an 'All Natural' designation must be resolved based on consideration of evidence—not at the

2    pleading stage." *Ibid.* [13]

3              *(b) Plaintiff Has Plausibly Alleged That the Term "All Natural" Would Mislead*

4                    *the Reasonable Consumer.*

5         Defendant's garbled argument appears to be that reasonable consumers would not be

6    misled by its "all natural" claims because the ingredient statements identify the challenged

7    ingredients, namely, citric acid, maltodextrin, and paprika extract. (Mem. 13:11-14.)

8         This proves nothing. Again, Defendant cannot rely on the ingredient statement to

9    "correct" misinterpretations made elsewhere and "provide a shield for liability for the

10    deception." *Williams*, *supra*, 552 F.3d at 939-940. *See also Lam v. Gen. Mills, Inc.*, 859

11    F.Supp.2d 1097, 1105 (N.D.Cal.2012) ("[I]ngredients list cannot be used to correct the message

12    that reasonable consumers may take from the rest of the packaging"). Indeed, this District in

13    *Surzyn* rejected Defendant's argument, regurgitated here, that merely identifying the challenged

14    ingredients in ingredient statement somehow renders "all natural" claim less deceptive. *Surzyn*,

15    *supra*, at *4.

16         The fact is, many consumers either fail to read the ingredient statement entirely or,

17    being unknowledgeable about food science, do not know that the challenged ingredients are not

18    natural.[14] *Bohac*, *supra*, at * 7 ("At the pleading stage, I will not conclude as a matter of law

19    that a reasonable consumer should be expected to know that ingredients such as 'soy lecithin,'

20    'corn syrup' or 'natural flavor' are not natural.") A reasonable consumer would expect the

21    listed ingredients to be consistent with Defendant's all-natural representations, not at odds with

22    them. *See Williams*, *supra*, 552 F.3d at 939-940. But according to Defendant, consumers

23    reading the ingredient statement should not only identify the challenged ingredients as being

24

25    [13] Other courts have also rejected *Pelayo* on the same basis. *See Jou*, *supra*, 2013 WL

26    6491158, at *8 (stating that Pelayo "is at odds with basic logic, contradicts the FTC statement
        on which it relies, and appears in conflict with the holdings of many other courts, including the

27    Ninth Circuit."); *Rojas v. Gen'l Mills, Inc.*, 2014 WL 1248017, at *6 (N.D. Cal. Mar. 26, 2014).
        [14]   The Complaint does allege that reasonable consumers would not view the Misbranded

28    Products as being "all natural" had they known that these ingredients were artificial, chemical,
        and/or synthetic. (Compl. ¶ 16.)

unnatural but interpret Defendant's "all natural" claims to actually mean something other than "all natural."   It is unlikely that any reasonable consumer would reach such a preposterous conclusion.

What is more, the FDA has issued warning letters admonishing food manufacturers for labeling products containing citric acid and other synthetic, artificial, and chemical ingredients as all natural and failing to disclose the presence of chemical preservatives and artificial flavoring.[15]   These warning letters "nudge [Plaintiff's] claims across the line from conceivable to plausible."   *See*, *e.g.*, *Gitson v. Trader Joe's Co.*, 2013 WL5513711, at *10 (N.D. Cal. Oct. 4, 2013) (finding that plaintiff stated a plausible claim in light of topical FDA warning letters).

Not surprisingly, courts routinely find that plaintiffs challenging "all natural" claims on product labels satisfy the plausibility requirement under Rule 12(b)(6)[16] and therefore conclude that whether reasonable consumers would be misled by Defendant's all-natural representations

---

[15] *See*, Plaintiff's RJN, filed concurrently herewith, Exhs. E - K.

[16]   *See*, *e.g.*, *Janney v. Mills*, 2014 WL 1266299, at *3 (N.D. Cal. Mar. 26, 2014) (collecting cases in which "[c]ourts have found similar claims challenging the terms 'all natural' and 'natural' to be sufficient basis for a cause of action under California's consumer protection laws"); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1080 (E.D.Cal.2010) ("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe that the products would contain [high fructose corn syrup].... [P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling."); *Bohac v. General Mills, Inc.*, 2014 WL 1266848, at * 4 (N.D. Cal. Mar. 26, 2014)(finding that plaintiff could state a claim for "all natural" representations where product contained allegedly highly processed ingredients and GMOs; collecting cases); *Williams v. Gerber Products Co.*, *552 F.3d 934* (9th Cir. 2008) (reversing dismissal of breach of warranty and unfair competition claims challenging "all natural" toddler snacks containing corn syrup and sugar); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009) (reversing dismissal of case involving "all natural" iced tea containing high fructose corn syrup); *In re Conagra Foods Inc.*, 908 F.Supp.2d 1090 (C.D. Cal. 2012) (denying in part motion to dismiss similar claims of "100% all natural" cooking oil containing genetically modified organisms); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) (denying motion to dismiss similar claims regarding "all natural" pasta sauce containing high fructose corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" ice cream containing alkalized cocoa); *Henderson v. Gruma Corp.*, 2011 WL 1362188 at *11 (C.D. Cal. Apr. 11, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip containing transfats).

---

-18-

is not a question that should be determined at the pleading stage.[17]

Defendant also makes a passing, cryptic reference to its "Our Natural Promise," which appears on some of the product labels.  (Mem. 12:10.)  Defendant does not explain why this matters.  As the court in *Surzyn* noted, "It is unclear how these representations resolve any ambiguity regarding the meaning of 'All Natural.'  If anything, the Our Natural Promise statement serves to further mislead the consumer—not clarify what is meant by that term." *Surzyn*, *supra*, at *5.  Furthermore, Plaintiff alleges that Defendant violated the Our Natural Promise through the use of preservatives, artificial flavoring, and color additives, *see* Compl. ¶¶ 28-38, which according to the FDA render a product not natural regardless of source.  (*Id.* at ¶ 15.)  Plaintiff has also alleged that the Misbranded Products may, contrary to the "Our Natural Promise," contain ingredients made from genetically modified organisms (GMOs) such as the corn starch used in citric acid production.  (*Id.* at ¶ 26.)  *Bohac*, *supra*, at *1-2.[18]

Defendant's continued reliance on *Pelayo* is misplaced because, as noted above, it directly contradicts the Ninth Circuit's holding in *Gerber* that merely listing the challenged ingredients in the ingredient statement does not exonerate a defendant for the misrepresentations made elsewhere and more prominently on the product.  (*See* pp. 16-17, *supra*.)  Again, a reasonable consumer, even if he or she read the ingredient statement, would have likely understood it as confirming the other labeling representations.  (*Ibid.*)  This is a plausible conclusion to draw given that citric acid is "popular[ly] believed" (Comp. ¶ 24) to be

---

[17]  *See*, *e.g.*, *Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) (explaining that "the relevant question" in a deceptive labeling case "is the meaning that consumers would attach to the term" at issue and that "this is generally not a question that can be resolved on a motion to dismiss"); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that "whether a reasonable consumer" of a product that contains synthetic ingredients "would likely be deceived by the designation 'All Natural' is a factual dispute" that cannot be resolved at the motion-to-dismiss stage).

[18]  Defendant quibbles with this allegation because it is made on information and belief, but the allegation is not merely conclusory; rather, Plaintiff pleaded the essential facts on information and belief based on a widely used method of citric-acid production which uses GM corn starch as starter material.  (*Id.* at ¶¶24, 25)  *See Hightower v. Tilton*, 2012 WL1194720, at *4 (E.D. Cal. Apr. 10, 2012) ("The mere fact that allegations begin with the statement 'on information and belief' will not automatically render them insufficient.") (quoting authority).

---

1  fruit-derived, and the reasonable consumer without knowledge of food science would not have

2  reason to know that maltodextrin is not natural.[19]

3  **C. The Court Should Deny Defendant's Motion to Strike References to So-Called**

4  **"Non-Label Material."**

5  Defendant argues that Plaintiff does not have standing to assert claims based on website

6  content.  (Mem. 14:1-15:6.)  Defendant is incorrect.

7  First, Plaintiff alleges that the statements appearing on Defendant's website and in its

8  marketing materials are similar or identical to the statements appearing on the product labels.

9  (*See, e.g.*, Compl. ¶¶ 10-13, 23, 28, 29, 33, 38, 39, 43-44.)  For example, Plaintiff alleges upon

10  information and belief that some of the Misbranded Reduced-Fat Products fail to identify the

11  reference food on the bag as required, and this omission aligns with the product images on

12  Defendant's website, where the reference food is similarly not identified.  (Compl. ¶ 13; Pl.'s

13  RJN, Exh. C.)  Where the misrepresentations are similar or identical, a plaintiff is "not required

14  to plead with an unrealistic degree of specificity that the plaintiff relied on particular

15  advertisements or statements."  *Rikos v. Proctor & Gamble*, 782 F.Supp.2d 522, 535 (2011)

16  (finding allegation that all advertising statements carried the same message sufficient to state a

17  claim under UCL without plaintiff identifying the specific advertising statements relied on).

18  [19] The remaining cases cited by the Defendants to support their position here are equally
unhelpful.  *See Hairston v. So. Beach Beverage Co.*, Inc., 2012 WL 1893818, *5 (C.D. Cal.
19  Apr. 16, 2012) (dismissing claim where "all natural" was resolved by immediately followed by
20  clarifying words "with vitamins"); *Balsar v. Hain Celestial Group, Inc.*, 2013 WL 6673617, *2
(C.D. Cal. Dec. 18, 2013) (involving "100% vegetarian" claim, not "all natural" claim); *Rooney*
21  *v. Cumberland Packing Corp.*, 2012 WL 1512106, at *4 (S.D. Cal. April 16, 2012) (finding
that "raw" cane sugar did not mean unrefined and unprocessed, especially given well-
22  understood meaning of turbinado sugar); *Morgan v. Wallaby Yogurt Co., Inc.*, 2013
WL5514563, at *8 (N.D. Cal. Oct. 4, 2013) (dismissing complaint because plaintiffs did not
23  distinguish between added sugar and naturally occurring sugar); *Gitson v. Trader Joe's Co.*,
24  2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) (finding that consumers would not confuse
soy milk with cow's milk where product explicitly stated  Organic Soy Milk is "lactose & dairy
25  free" and is an "alternative to dairy milk."); *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d
26  877, 892 n.39 (C.D. Cal. 2013) (finding that consumers would not be deceived by label stating
"all natural flavors" when the product in fact contained no artificial flavors but only artificial
27  ingredients); *Rojas v. General Mills, Inc.*, 2014 WL 1248017, at *6 (N.D. Cal. Mar. 26, 2014)
(expressly rejecting the exact same arguments for the exact same product at issue in *Chin v.*
28  *General Mills, Inc.*, 2013 WL 2420455, at *5.

1     Moreover, even if the website and marketing materials referred to in the Complaint are

2   not actionable by themselves, Plaintiff has alleged claims, *inter alia*, arising from fraudulent

3   conduct, and Defendant's intent to deceive is relevant to that claim.   Plaintiff has made

4   allegations referencing Defendant's website and marketing materials in part to evidence

5   Defendant's intent to deceive consumers into buying the Misbranded Products.  *See Fitzpatrick*

6   *v. General Mills, Inc.*, 263 F.R.D. 687, 693 (S.D. Fla. 2010) ("[A] plaintiff seeking to prove

7   that [a defendant's] health message is 'deceptive' may rely on any evidence concerning that

8   message, including advertisements to which he or she was not personally exposed.")  In this

9   regard, the fact that the website images of the Misbranded Reduced-Fat Products in particular

10  completely omit identification of the reference food—information that Plaintiff contends is

11  suppressed, if it appears at all, on the product labels themselves—demonstrates that Defendant

12  designed the labels with the intent to deceive and did deceive Plaintiff.  (Compl. ¶¶ 13, 40.)

13     As Defendant notes, Plaintiff must plead "sufficient factual matter" to state a claim

14  (Mem. 14:24), and Plaintiff makes allegations referencing Defendant's website and

15  promotional materials in order to meet that burden and offer more than bare conclusory

16  allegations evidencing Defendant's fraudulent conduct.  *See Morey v. NextFoods, Inc.*, 2010

17  WL 2473314, at * (S.D. Cal. Jun. 7, 2010) (denying motion to strike advertisements that

18  plaintiff never saw or relied upon because "[a]ll [defendant's] advertisements … could possibly

19  bear on the subject matter of the litigation.")

20     Moreover, Defendant's website, www.kettlebrand.com, makes unlawful claims that

21  become part of the label and thus render the subject products misbranded.  Product labels

22  incorporate by reference the representations made on websites referenced thereon.  Labeling

23  includes "all … written, printed or graphic matter (1) upon any article or any of its containers

24  or wrappers, or (2) accompanying such article."  21 U.S.C. § 321(m).  The FDA has repeatedly

25  issued warning letters indicating websites constitute "labeling" under 21 U.S.C § 321(m).[20]

26  _____

27  [20]   *See* Plaintiff's RJN, Exhs. I & K.   Where, as here, the agency is interpreting its own
    regulations such as the food labeling rules that interpretation is "controlling."  *See Public Lands*

28  *for the People, Inc. v. United States Dep't of Agric.*, 697 F.3d 1192, 1199 (9th Cir. 2012) ("We
    give wide deference to an agency's reasonable interpretation of its own regulation.").

-21-

1    Here, the product labels refer consumers to Defendant's website.  (Compl., Addenda 2,

2    3; Pl.'s RJN Exh. C.)  By placing its website address, www.kettlebrand.com, on the labels of

3    the Misbranded Products, Defendant incorporated by reference onto each and every product

4    sold the misrepresentations made on the website.

5    Because Defendant invites and directs consumers on its package labels to review the

6    contents of its website, this information becomes part of the labeling and, if unlawful, is

7    actionable under unlawful prong of the UCL, regardless of whether Plaintiff actually visited

8    Defendant's website.  If Defendant has misbranded a product and placed it in the stream of

9    commerce, and Plaintiff has purchased the product, then Plaintiff has a valid UCL unlawful

10   cause of action.  Plaintiff is injured because he paid money and purchased and possessed a

11   "misbranded" product.  Plaintiff paid money for and bought something that is illegal to possess,

12   worthless economically and as a matter of law, and is not merchantable.[21]  California law is

13   clear.  Under California Health & Safety Code § 110760, "it is unlawful for any person to

14   manufacture, sell, deliver, hold, or offer for sale any food that is misbranded."  Moreover, "it is

15   unlawful for any person to receive in commerce any food that is misbranded or to deliver or

16   proffer for delivery any such food."  *Id.* at § 110770

17   Indeed, violations of these statutes can be criminal, *see* Cal. Health & Safety Code §

18   111825, and Plaintiff has pleaded that he would not have purchased the product had he known

19   it was misbranded.  As a result, Plaintiff has properly pleaded an UCL unlawful claim.

20   **D. The Court Should Deny Defendant's Motion to Dismiss Plaintiff's Claim under the**

21       **Unlawful Prong of the UCL and Strike Relevant Allegations.**

22   Defendant asks the Court to dismiss Plaintiff's claim under the unlawful prong of the

23   UCL because, according to Defendant, Plaintiff has not alleged reliance. (Mem. 15:7-28.)  But

24   Plaintiff does allege that he read and relied on Defendant's labeling representations.  (Compl. ¶

25

26   _____

27   [21]  *United States v. Bhutani*, 266 F.3d 661, 670 (7th Cir. 2001) ("We agree with the district
     court's decision that there was indeed loss to consumers because consumers bought drugs
     under the false belief that they were in full compliance with the law."); *US v. Marcus*, 82 F.3d

28   606, 608 (4th Cir. 1996); *United States v. Milstein*, 401 F.3d 53, 58, 74 (2nd Cir. 2005).

49.)  *Cf. Brazil v. Dole Food Co.,* 2013 WL 5312418, at *9 (N.D. Cal. 2013) (no reliance because plaintiffs did not allege they actually viewed or relied on the subject representations). Because Plaintiff alleges reliance, the remainder of Defendant's discussion is immaterial.

Nonetheless the Court should not hold that the unlawful prong requires an allegation of reliance, nor should it strike the allegations of the Complaint asserting that the Misbranded Products are legally worthless.  (*Id.* at 15:25-28.)  Such a ruling would render the distinctions between the UCL's unlawful and fraudulent prongs a meaningless nullity.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).  The unlawful prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). To prevail on his UCL unlawful claim, Plaintiff need only show he (1) suffered injury in fact and (2) lost money or property as a result of the unfair competition.  *In re Steroid Hormone Prod. Cases,* 181 Cal. App. 4th 145, 154 (2010).  *Ibid.* Actual reliance by Plaintiff on labeling that is allegedly unlawful is not a necessary element under the UCL's unlawful prong.  *Id.* at 159 (2010) ("[W]here the UCL claim is based upon the unlawful prong of the UCL" there is "no issue regarding reliance").[22]

Plaintiff alleges that Defendant's products are unlawful under the UCL because they are misbranded in violation of the Sherman Law, which incorporates the FDCA. Because Plaintiff has alleged that Defendant's products were sold in violation of state law, neither he nor any members of the class need to establish (or plead) actual reliance. Because the product is illegal, it should never have been sold to Plaintiff in the first place.  (*See*

---

[22]  Numerous other cases have similarly held that reliance by either the plaintiff or the class is not relevant under the UCL's unlawful prong.  *See e.g.*, *Frezza v. Google Inc.*, 2013 WL I736788 (N.D. Cal. Apr. 22, 2013)  ("[N]o reliance is required to prove violations of the UCL based on 'unlawful' or 'unfair' conduct."); *Ries v. Arizona Beverages USA, LLC,* 287 F.R.D. 523, 537-38 (N.D. Cal. 2012); Stem, § 5.166, Bus. & Prof. Code § 17200 Practice (The Rutter Group 2012) ("That no one was actually deceived by the practice is not a defense to a section 17200 'unlawful' business practice claim").

1    p. 22, lns. 5-20, *supra*.)  The law presumes that consumers would not knowingly purchase an

2    illegal product.  *See*, *e.g.*, *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157.

3         Defendant cites to certain cases that have held otherwise (Mem. 15:19-24), but the

4    reasoning of these cases relies on a patent misreading of *Kwikset v. Super. Ct.*, 51 Cal. 4th 310

5    (2011).  In *Kwikset*, the plaintiff alleged the defendant falsely marketed and sold locks labeled

6    as "made in the USA" which in fact contained foreign-made parts and involved foreign

7    manufacture.  *Id.* at 317.  There was nothing about the locks that violated any state law other

8    than the fact that they falsely stated where they were made.  In short, the plaintiff's case

9    stemmed from the defendant's lie about where it made the locksets.  Based upon the reasoning

10   of *Tobacco II* noted above, the *Kwikset* court found that because the case was predicated upon

11   misrepresentation and deception, reliance was an element of the plaintiff's claim.  *Ibid.*  Just as

12   in *Tobacco II*, the *Kwikset* court "express[ed] no views concerning the proper construction of

13   the cause requirement in other types of cases" that were not based upon fraud,

14   misrepresentation, or deception. *Id* at 326, n.9.  In sum, *Kwikset* stands for the proposition that

15   a showing of actual reliance under the UCL is reserved for those cases where the product is not

16   illegal to sell or possess.

17        Because of the UCL's intentionally "sweeping language," "virtually any law or

18   regulation—federal or state, statutory or common law—can serve as a predicate for a [Section]

19   17200 'unlawful' violation."  *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681

20   (2006).  Yet according to Defendant and the cases it cites, a violation of the Sherman Law

21   cannot qualify as a predicate for a UCL unlawful-prong violation.  Of course, the plain

22   language of the UCL contains no such exception.  Nor does the Sherman Law exempt itself

23   from acting as a predicate to the UCL.

24        By determining that the plaintiff's unlawful claims based upon violations of the

25   Sherman Law "sound in fraud," the cases cited by Defendant have rendered meaningless the

26   "unfair" and "fraudulent" prongs of the UCL in the context of a Sherman Law violation.

27   *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (noting that "a business act or

28   practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent.'  Each of these

three adjectives captures 'a separate and distinct theory of liability.'").   However, courts are instead required to interpret a statute to give effect to all of its provisions.  *See Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004).

Consequently, although the Court need not decide the issue, it should find that reliance is not necessary to state a claim under the UCL's "unlawful" prong.

### E.  Plaintiff Has Sufficiently Stated a Claim for Unjust Enrichment.

Defendant argues that unjust enrichment is not a cause of action.  (Mem. at 16.)  But numerous courts in this District and others have routinely denied motions to dismiss unjust-enrichment claims in food-mislabeling cases such as this one where, as here, it is pleaded in the alternative to tort or contractual theories of recovery.[23]   Thus the Court should deny Defendant's motion to dismiss Plaintiff's Seventh Cause of Action.

### F.  Alternatively, Leave to Amend Should Be Granted.

Should the Court find the Complaint deficient, Plaintiff requests that he be given leave to file an amended complaint to cure any defects in the Complaint.  Leave to amend should be "freely given" when the plaintiff could cure the pleading defects and present viable claims. Fed. R. Civ. P. 15 (a).  If need be, Plaintiff should be granted leave to amend because he can present viable claims on all causes of action included in the Complaint.

### VI. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion to dismiss and strike be denied.  Alternatively, the Court should grant leave to amend.

DATED: June 19, 2014                     Respectfully submitted,

                                                        COUNSELONE, PC

                                                        By:____*/s/ Anthony J. Orshansky*_____
                                                             Anthony J. Orshansky
                                                             Justin Kachadoorian
                                                             Attorneys for Plaintiff RICHARD HALL

---

[23] *See*, *e.g.*, *Khasin v. Hersey Co.*, 2012 WL5471153, at *9 (N.D. Cal. Nov. 9, 2012); *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL6737800, at *10 (N.D. Cal. Dec. 28, 2012); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012); *Larsen v. Trader Joe's Co.*, 2012 WL5458396, at *7 (N.D. Cal. June 14, 2012); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *11 (N.D. Cal. May 26, 2011).